# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ——————————————— | ) | |
| **PHILIP J. TRIDICO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 13-0937 (ESH)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ——————————————— | ) | |

## MEMORANDUM OPINION

Plaintiff Philip Tridico has moved for attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and 38 U.S.C. § 4323(h)(2), under which the Court has discretion to award reasonable fees to a prevailing party.  (Pl.'s Mem. in Supp. of Mot. for Attorneys' Fees and Costs [ECF No. 75] at 3 ("Pls.' Mot.").)  Defendant, the District of Columbia (the "District"), does not dispute that plaintiff is entitled to fees, but it argues that Tridico's request of $314,734.62 in fees and $2,797.56 in costs is unreasonable and should be denied in part.  (See Def.'s Opp'n Br. [ECF No. 79] at 1; Pl.'s Reply Br. [ECF No. at 23].)  The District proposes various reductions in fees and costs, for a total recovery of no more than $151,061.97.  (Def.'s Opp'n Br. at 2–3.)  The Court agrees that Tridico is not entitled to the full amount requested, though he is entitled to more than the District proposes to pay.  Therefore, Tridico's motion will be granted in part and denied in part.

# BACKGROUND

The background of this case has been laid out in great detail in the Court's previous Memorandum Opinion.  *See Tridico v. Dist. of Columbia*, 130 F. Supp. 3d 17, 19–23 (D.D.C. 2015).  The Court will therefore recite only the facts relevant to Tridico's fee petition.

Tridico, a Roman Catholic who previously served in the United States Marine Corps and the Marine Corps Reserves, became a police officer in the District of Columbia Metropolitan Police Department in 2006.  In 2013, Tridico brought this action against the District, alleging that he was subjected to discrimination, retaliation, and a hostile work environment on the basis of his religion, in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§2000e, *et seq*., and on the basis of his prior military service, in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301, *et seq*.  (Compl., June 21, 2013, [ECF No. 1] at 10–12.).[1]

The District moved for summary judgment, which the Court granted in part and denied in part.  *See Tridico*, 130 F. Supp. 3d at 19.  Following summary judgment, four of Tridico's five surviving claims went to trial:  (1) hostile work environment under Title VII; (2) retaliation under Title VII; (3) hostile work environment under USERRA; and (4) retaliation under

---

[1] Tridico's complaint also included claims—which he later dismissed—for discrimination, hostile work environment, and retaliation under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401, *et seq*.  Tridico pursued those DCHRA claims in administrative proceedings before the District of Columbia Office of Human Rights ("DCOHR") prior to filing this lawsuit.  "The DCOHR determined that there was probable cause to believe that the District had subjected [Tridico] to a hostile work environment because of his religion, but that there was no probable cause to support his retaliation claim." *Tridico*, 130 F. Supp. 3d at 22.  In abandoning the DCHRA claims, Tridico acknowledged that "[i]f a complainant has filed a complaint with the DCOHR, he cannot then sue in court, unless he first withdraws the complaint [before a for-cause determination]."  (Pl.'s Opp'n to Def.'s Mot. for S.J. [ECF No. 30] at 9 n.2 (quoting D.C. Code §2–1403.16(a)).)

USERRA.  (Order, Dec. 23, 2015 [ECF No. 49].)  A jury heard the case over four days

beginning on December 11, 2015.

After deliberations, the jury returned a verdict in favor of Tridico on his Title VII claims.

(*See* Verdict Form [ECF No. 70].)  Specifically, the jury found that Tridico proved by a

preponderance of the evidence that (1) the District "subjected [Tridico] to unwelcome

harassment based on his religion that was so severe or pervasive . . . as to affect a term,

condition, or privilege of [Tridico's] employment;" (2) Tridico "complained to his superiors

about harassment . . . and [the District] subjected [Tridico] to an adverse employment action

when it transferred him out of the VICE unit;" and (3) the District "would not have transferred

[Tridico] out of the VICE unit but for his complaint about harassment based on his religion."

(*Id.* at 1–2.)  As a result of its finding on the Title VII claim, the jury awarded Tridico $20,000 in

compensatory damages for "emotional pain, suffering, inconvenience, mental anguish, and/or

other non-monetary losses."[2]

By contrast, the jury found in favor of the District on Tridico's USERRA claims.  The

jury determined that Tridico proved by a preponderance of the evidence that (1) the District

"subjected [Tridico] to unwelcome harassment based on his prior military service that was so

severe or pervasive . . . as to affect a term, condition, or privilege of [Tridico's] employment,"

and (2) Tridico "complained to his superiors about harassment . . . based on his prior military

service, and that [the District] subjected [Tridico] to an adverse employment action when it

transferred him out of the VICE unit."  (*Id.* at 2.)  However, the jury did not find that Tridico

---

[2] Lost earnings under Title VII are an equitable remedy that, although compensable, are ultimately calculated by the Court.  (*See* Order, December 23, 2015, [ECF No. 49] at 1 (citing, *inter alia*, Kapche *v. Holder*, 677 F.3d 454, 464 (D.C. Cir. 2012).)  However, the jury calculates lost earnings awarded under USERRA.  (Order, January 8, 2016, [ECF No. 59] at 1.)  The jury did not find that Tridico successfully proved any economic harm.  (*See* Verdict Form at 3.)

proved causation–that his complaint about harassment "was a substantial or motivating factor" in the adverse employment action.  (*See id.*)  Thus, the jury did not award any damages for Tridico's USERRA claim.  (*Id.* at 3.)[3]

## LEGAL STANDARD

The Court has discretion to award a prevailing party reasonable attorneys' fees and costs in Title VII and USERRA actions. *See* 42 U.S.C. § 2000e–5(k) ("In any action or proceeding under [Title VII], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee"); 38 U.S.C. § 4323(h)(2) ("In any action or proceeding to enforce a provision of [USERRA] . . . , the court may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses").  A party seeking attorneys' fees and expenses must file a motion to the Court which "specif[ies] the judgment and the statute, rule, or other grounds entitling the movant to the award" and stating the amount sought.  Fed. R. Civ. P. 54(d)(2)(B).

In a fee petition, the moving party "bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates." *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  The movant may satisfy this burden by presenting evidence of "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community."  *Id.* After such evidence has been presented, the burden shifts to the party opposing the fee petition to rebut the reasonableness of the requested award. *Id.* at 1109–10.

---

[3] Lost earnings, but not pain and suffering, are compensable under USERRA.  *See* 38 U.S.C. § 4323(d)(1).  The $20,000 in compensatory damages could only have been awarded under Title VII.

In evaluating a fee petition, the Court first determines whether the movant was the prevailing party, and second whether the movant's fee request is reasonable. *Does I, II, III v. D.C.*, 448 F. Supp. 2d 137, 140 (D.D.C. 2006). To determine whether the fee request is reasonable, courts engage in a three-step analysis: "(1) determination of the number of hours reasonably expended in litigation; (2) determination of a reasonable hourly rate or 'lodestar'; and (3) the use of multipliers as merited." *Covington*, 57 F.3d at 1107 (quoting *Save Our Cumberland Mountains, Inc., et al. v. Hodel*, 857 F.2d 1516 (D.C. Cir 1988)). Even after courts determine the lodestar figure, they may reduce the overall award to account for, *inter alia*, limited success on the merits and unreasonable billing practices. *See, e.g.*, *Craig v. Dist. of Columbia*, No. CV 11-1200, 2016 WL 3926253, at *9 (D.D.C. July 15, 2016).

## ANALYSIS

The District does not dispute Tridico's entitlement to attorneys' fees based on the jury's verdict in Tridico's favor on his Title VII claims. Nevertheless, the District argues that the award requested by Tridico is unreasonable on several grounds and proposes various reductions. After considering whether Tridico has met his initial burden to "document[] the appropriate hours, and [to] justify[] the reasonableness of the rates," *see Covington*, 57 F.3d at 1007, the Court will proceed to address the District's specific arguments.

## I.  TRIDICO'S DOCUMENTATION OF APPROPRIATE HOURS AND JUSTIFICATION OF REASONABLE RATES

In support of his fee petition, Tridico submitted the following evidence: (1) the declaration of Brian J. Markovitz, partner at Joseph, Greenwald & Laake, P.A. ("JG&L"), the firm that represented Tridico on a contingency basis beginning October 2012; (2) the declaration of Nicholas Woodfield, the principal at the Employment Law Group, P.C.; (3) and the declaration of Linda Thatcher, an experienced employment litigator.

Over the first nine and a half pages of his declaration, Markovitz details the experience of the JG&L attorneys that worked on Tridico's case, attests to JG&L's billing and record-keeping practices, and declares that those practices were followed in this case.  (*See* Markovitz Decl. [ECF No. 75-4], ¶¶ 1–25.)  Markovitz also submitted daily billing records for each JG&L professional's fees and the costs incurred by the law firm.  (*See id.* at 12–39.)  Both Woodfield and Thatcher's declarations speak to the reasonableness of the fees requested by JG&L, based on their experience in employment litigation, their work with JG&L professionals, and the prevailing market rates for similar work.  (*See* Woodfield Decl. [ECF No. 75-5]; Thatcher Decl. [ECF No. 75-6].)  Thus, as to the legal work performed by JG&L, Tridico carried his initial burden of demonstrating "document[ation of] the appropriate hours, and justif[ication of] the reasonableness of the rates."  *See Covington*, 57 F.3d at 1107.[4]

By contrast, Markovitz devotes only two paragraphs of his declaration to justifying the fees incurred by Berry & Berry, PLLC, the firm that represented Tridico in his DCHRA claims before DCOHR.  (*See* Markovitz Decl. ¶¶ 26–27.)  Although Markovitz submits "recorded hours and expenses of work performed" by Berry & Berry, the request for fees for Berry & Berry's legal work is otherwise unsubstantiated.  (*See id.*)  Based on the time records of Berry & Berry, the Court cannot discern even the full name of the attorneys who worked on Tridico's case, let alone the attorneys' education and experience.  Woodfield and Thatcher do not address the

---

[4] The Court could not fully evaluate Tridico's assertion that "deductions from [Tridico's] counsel's invoices (over ninety nine (97) hours and $32,456.00 in fees) were made in order to avoid duplicate billing."  (Pl.s Mot. at 16.)  Some of the entries on the spreadsheet submitted by Markovitz are labeled "NC" for "no charge."  Those entries, totaling $20,816.50, will not be included in the award.  Other entries are labeled "R" for "reduced," but the number of hours purported to have been reduced for each entry was not detailed.  Therefore, after subtracting the entries labeled "NC" and making the appropriate deductions based on the District's objections, the Court will reduce Tridico's overall award by $11,639.50–the difference between Tridico's claimed $32,456.00 in deductions and the $20,816.50 in "no charge" fees.

reasonableness of the fees reported by Berry & Berry or attest to those attorneys' skill, expertise, or reputation.  (*See* Woodfield Decl.; Thatcher Decl.)

With respect to the legal work performed by Berry & Berry, Tridico has therefore failed to carry his initial burden:  Tridico submitted no evidence of "the [Berry & Berry] attorneys' billing practices; the [Berry & Berry] attorneys' skill, experience, and reputation."  *See Covington*, 57 F.3d at 1107.  As a result, the Court will reduce Tridico's requested fees by $20,163.00, the amount he requested for Berry & Berry's legal work.[5]  For the same reason, the Court will not award the requested $47.30 in costs attributed to Berry & Berry's representation of Tridico.

## II.  UNREASONABLE BILLING RATES

### 1.  Applying 2016 USAO Rates to Work Performed Before 2016

Tridico seeks reimbursement of his attorneys' fees incurred between 2012 and 2016 at the rates set by the District of Columbia United States Attorney's Office ("USAO") for work performed in 2016.  (Pl.'s Mot. at 12.)[6]  Tridico argues that applying the 2016 USAO rates to

---

[5] The District objects to the Berry & Berry fees on the ground that Tridico's representation before the DCOHR is non-compensable because Tridico did not pursue his DCHRA claims in federal court.  (Def.'s Opp'n at 5.)  As Tridico has failed to justify these fees in the first instance, the Court need not address this argument.

[6] Fee matrices set out the hourly fees charged by attorneys at various levels of experience in a particular community for the same type of work and offer a "somewhat crude" approximation of prevailing market rates.  *Snead v. Dist. of Columbia*, 139 F. Supp. 3d 375, 378 (D.D.C. 2015) (quoting *Eley v. Dist. of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015).  The *Laffey* Matrix, compiled by the USAO and updated annually to adjust for inflation, is the most commonly used fee matrix.  *Eley*, 793 F.3d at 100–01.  However, beginning on June 1, 2015, the USAO discontinued the *Laffey* Matrix in favor of a matrix that uses a new methodology.  *See* USAO Attorney's Fees Matrix – 2015–2017 n.4 (https://www.justice.gov/usao-dc/file/889176/download) ("The methodology used to compute the rates in this matrix replaces that used prior to 2015, which started with the matrix of hourly rates developed in *Laffey v. Northwest Airlines, Inc*. 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), and then adjusted those rates based on the Consumer Price Index for All Urban Consumers (CPI-U) for the

work done in prior years is appropriate to account for the District's unnecessary delay in resolving the lawsuit and to account for the lost time-value of money.  (*Id.* at 11–12.)  The District argues that the fee award should be calculated using the rates in effect at the time the work was performed, which would constitute a $14,909.90 reduction in the fees that Tridico has requested.  (Def.'s Opp'n at 7–9.)

There is no dispute that the USAO and *Laffey* rates are appropriate in this case.  Courts in this circuit have determined that Title VII actions are sufficiently complex to justify awarding attorneys' fees at *Laffey* rates–and by implication at the USAO rates that replaced them.  *See Craig*, 2016 WL 3926253, at *3 (collecting cases).  Indeed, the USAO Matrix applies to Title VII actions by its own terms.  *See* USAO Attorney's Fees Matrix – 2015–2017 n.1 ("The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees" (citing, as an example, Title VII)).

As to determining which year's USAO and *Laffey* rates should apply to the legal work performed in this case, the D.C. Circuit has sanctioned the application of current prevailing rates–as opposed to the rates in effect when the work was performed–as a means of compensating the party seeking attorneys' fees for the delay in receiving payment.  *See West v. Potter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013).  However, the D.C. Circuit has cautioned that there is a "strong presumption" in favor of the application of historical rates.  *Id.*  Here, the Court does not find that "compensation for delay is necessary to provide a reasonable fee" such that current USAO rates should be applied to past work.  *See id.*

---

Washington-Baltimore (DC-MD-VA-WV) area.").  The Court will refer to the table of rates set by the USAO after June 1, 2015 as the "USAO Matrix," while acknowledging that the parties use "*Laffey*" to describe the rates prevailing in 2015 and 2016, as well as in prior years.

It does not appear that the resolution of this lawsuit was delayed.  Tridico filed this

lawsuit on June 21, 2013, and the matter went to trial on January 11, 2015.[7]  Although the

District's failure to attend settlement conferences is regrettable, that failure did not significantly

delay the resolution of the litigation.  While the District engaged in motions practice, it did not

raise frivolous legal arguments, and the parties were able to narrow the issues that went to trial.

Indeed, the District prevailed in part on its motion for summary judgment and on its position on

various legal issues leading up to trial.  The Court finds that there is no good reason to deviate

from the "strong presumption" of applying historical rates here.[8]  The Court will therefore reduce

Tridico's requested rates to reflect the USAO or *Laffey* rates in effect at the time the work was

performed.

### 2. Fees on Fees

Tridico seeks $52,524.50 in fees for time spent preparing his motion for attorneys' fees

and reply to the District's opposition brief.  (*See* Ex. A, Markovitz Decl, at 24–25; Pl.'s Reply at

22.)  The District argues that Tridico should recover only 50% of the USAO rates for the work

performed preparing the fee petition, reasoning that this legal work is "inherently less

complicated than the underlying litigation" that justified full USAO or *Laffey* rates.  (Def.'s

Opp'n Br. at 14.)  On that basis, the District proposes a reduction of $26,262.25.  (*See id*.)  In

support of its position, the District fails to point to any cases arising under Title VII, only citing

---

[7] In the district court for the District of Columbia, the *median* time from filing a civil lawsuit until a disposition at trial was 37.4 months for the 12-month period ending June 30, 2016.  *See* U.S. District Courts—Median Time Intervals from Filing to Disposition of Civil Cases (http://www.uscourts.gov/sites/default/files/data_tables/stfj_c5_630.2016.pdf).  At approximately 19 months, the resolution of Tridico's lawsuit was expeditious, as compared to other civil lawsuits that were resolved at trial in this district.

[8] The notion that Tridico suffered a loss based on the time-value of money is undercut by the fact that his attorneys agreed to take the case on a contingency basis (i.e., with recovery only at the end of the lawsuit) and that, practically speaking, money had almost zero time-value

to cases awarding fees under the Individuals with Disabilities Education Act ("IDEA"),

20 U.S.C. § 1415.  (*See id*.; Pl.'s Reply Br. at 21–22.)

There are instances where courts are justified in reducing the award requested for work in

connection with a fee petition.  *See Craig*, 2016 WL 3926253, at *9.  In *Craig*, for instance, the

party seeking attorneys' fees requested an additional 15% of the lodestar—over $80,000–as

compensation for the time spent on the fee petition.  *Id.*   In that case, Judge Contreras found the

fees on fees request to be excessive, especially given that some of the time spent on the fee

petition was already counted towards the lodestar.  *Id.*  Here, instead of seeking a percentage of

the total fee award, Tridico has detailed the time spent on his fee petition, and there has been no

double-counting.  On these facts, the Court finds no reason to reduce Tridico's award for time

spent preparing his fee petition.

## II.  LIMITED SUCCESS

The District next argues that Tridico's fee request should be reduced by 10% to reflect

his limited success in this litigation.  (*See* Def.'s Opp'n Br. at 9–13.)  The District notes that,

although Tridico proved Title VII liability, the jury found for the District on Tridico's USERRA

claims, and Tridico was not entitled to economic damages under Title VII or USERRA.  (*Id.*)  In

response, Tridico argues that "not only did [he] prevail on his USERRA claim, but such a claim

was novel and hotly disputed."  (Pl.'s Reply Br. at 15.)

A litigant need not prevail on each and every claim to be considered the prevailing party

in a Title VII lawsuit.  *See Ashraf-Hasan v. Embassy of Fr. in the U.S.*, No. CV 11-805, 2016

WL 3014615, at *3 (D.D.C. May 24, 2016).  Although generally fees should not be awarded for

unsuccessful claims, it is difficult to parse success for claims that "involve a common core of

from 2013 to the present.

facts" or "related legal theories." *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983).  In those cases, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis" and courts should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.* at 435.

First, Tridico did not prevail on his USERRA claim.  It is true, as Tridico points out, that the jury found that the District "subjected [Tridico] to unwelcome harassment based on his prior military service that was so severe or pervasive . . . as to affect a term, condition, or privilege of [Tridico's] employment."  (*Id.* (quoting Verdict Form at 2).)  However, Tridico failed to prove causation: the jury did not find that his "complaint about harassment in the workplace based on his prior military service was a substantial or motivating factor in [the District] transferring [Tridico] out of the VICE unit."  (*See* Verdict Form at 2.)  The jury found no damages for lost earnings, the only type of damages Tridico sought under USERRA.  (*See id.* at 3.)

In addition, Tridico failed to demonstrate that he suffered economic harm from the District's conduct, as he alleged in his complaint.  At trial, Tridico presented an economics expert witness who estimated that Tridico had lost $40,000 in overtime pay because after he was transferred out of the VICE unit.  (See Report of Jerome S. Paige at 1.)  Although the jury awarded $20,000 in compensatory damages, the jury found that Tridico suffered no lost earnings. (*See id.*)

Here, as is often the case where the various claims are interrelated, it is impossible to separate out the work done on unsuccessful claims.  The Court must therefore "simply reduce the award to account for the limited success."  *See id.* at 436–37.  In light of the fact that Tricico

prevailed on only his Title VII claims, and only to the extent that he collected non-economic

damages, the Court finds that a 10% reduction of the total fee award is appropriate.

## III.  UNREASONABLE BILLING PRACTICES

The District takes issue with two billing practices reflected in Tridico's invoice, arguing

for (1) a 5% overall reduction to account for block billing, and (2) a 50% reduction in fees for

travel time, which was billed at 100% the USAO and *Laffey* rates.  (Def.'s Opp'n Br. at 1–2, 13.)

Tridico vigorously disputes having block billed any entries but concedes that travel time should

be billed at 50% of the normal billing rate.  (Pl.'s Reply Br. at 19–20).  Because Tridico's billing

records are in fact block-billed, the parties disagree on the precise amount of travel time to be

discounted.

### 1. Block Billing

Block billing involves lumping multiple tasks into a single time entry, which can "mak[e]

it impossible to evaluate their reasonableness."  *See Role Models Am., Inc. v. Brownlee*, 353 F.3d

962, 971 (D.C. Cir. 2004).  While block billing is not "prohibit[ed]," courts often reduce fee

awards as a result of it.  *See Role Models Am., Inc.*, 353 F.3d at 971; *Bennett v. Castro*, 74 F.

Supp. 3d 382, 406 (D.D.C. 2014); *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 289 (D.D.C. 2009);

*Summers v. Howard Univ.*, 2006 WL 751316, at *7 (D.D.C. Mar. 20, 2006).  Even if tasks are

adequately described, there is simply no way for the Court to assess whether the time spent on

each of those tasks was reasonable when they are lumped together.  *See Role Models Am., Inc.*,

353 F.3d at 970 (court must "determine with a high degree of certainty that such hours were

actually and reasonably expended") (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989).

Where block billing is used infrequently, however, a reduction may not be warranted.  *See Fitts*

*v. Unum Life Ins. Co. of Am.*, 680 F. Supp. 2d 38, 42 (D.D.C. 2010) (declining a reduction where only a "relatively small fraction" of entries were block-billed).

There is no question that the JG&L time records are at least in part block-billed.  It includes 50 entries of five hours or more, 19 of which are for more than eight hours, and many of which are block billed.  (*See, e.g.*, Ex. A, Markovitz Decl. at at 3 (November 12, 2013 entry by MSS for 5.50 hours for "[r]eview pleadings and case file – and email opp counsel re: 25(f) conference; prepare draft Local Rule 16.3 joint report; send draft to opp counsel"); *id.* at 15 (December 8, 2015 entry by BJM for 10.40 hours for "[d]rafting pretrial statement, review of documents, drafting voir dire, jury instructions, etc., call and emails with opposing counsel re: status, drafting joint motion for extension for pretrial"); *id.* at 18 (December 22, 2015 entry by BJM for 8.20 hours for "[p]reparation for pretrial, research on jury determination issues, causation standard, and admissibility of EEOC findings, document review, meeting with SBV re: same and pretrial motions preparations"); *id.* at 23 (January 11, 2016 entry by BJM for 12 hours for "[t]ravel time to and from D.C. Federal Court; trial; trial preparation; discussion with BJM and VM").  The most frequent block-billed entries are those that include travel time.  In fact, with only three exceptions, travel time is block-billed along with other tasks.  (*See, e.g.*, Ex. A, Markovitz Decl. at 24 (eight out of nine travel entries on that page block-billed with time spent at trial).  *But see id.* at 13 (November 12, 2015 entries by VXM).)

Because the block billed entries that do not include travel are relatively infrequent, the Court rejects the District's request to reduce Tridico's overall award by 5%.  Instead, as explained below, travel time will be disambiguated, and the rate for that time will be reduced.

**2. Travel Time**

Tridico concedes that his fee request improperly bills attorney travel time at a full rate, as opposed to the correct rate of 50%. (*See* Pls.' Reply Br. at 19; *see also McAllister v. Dist. of Columbia*, 21 F. Supp. 3d 94, 106 (D.D.C. 2014) ("[I]n this Circuit, travel time is compensated at half of the attorney's rate.").  To account for this overbilling and to disambiguate the travel time from the other items in each entry, the District proposes estimating the round-trip from JG&L's offices to the District Court at 1.5 hours. (*See* Def.'s Opp'n Br. at 13.).  The District's estimate of 1.5 hours comes directly from JG&L's travel entries that were not block-billed.  Tridico asks that the Court to estimate one hour for travel time, citing case law that estimated travel time for a different law firm "just across the District of Columbia border." (*See* Pl.'s Reply Br. at 20 (citing *Blackman v. Dist. of Columbia*, 397 F. Supp. 2d 12, 16 (D.D.C. 2005).)

The District has the better approach.  As a result, the Court will estimate 1.5 hours for travel time on block-billed entries and reduce the rate for that time by 50%.

**IV.  UNREASONABLE COSTS**

The District objects to three aspects of Tridico's request for costs, arguing that (1) Tridico's printing costs should be limited to $0.15 per page; (2) Tridico overbilled by $247.25 for court reporters and depositions; and (3) Tridico unreasonably billed certain parking expenses.  (Def.'s Opp'n Br. at 13–14.)

**1. Printing Costs**

Tridico seeks reimbursement for printing costs at $0.15 for black-and-white copies and $0.75 for color copies.  In response to the District's objection, Tridico has conceded a $0.50 reduction for color copies to $0.25 per page, an amount approved in *Salazar v. Dist. of*

*Columbia*, 991 F. Supp. 2d 39, 64 (D.D.C. 2014).  The Court accepts this concession, which amounts to a $12.50 reduction in printing costs.

### 2. Court Reporter and Deposition Costs

With his reply brief, Tridico submitted the receipts from the court-reporter service he used in connection with his depositions.  (*See* Ex. 2 & 3, Pl.'s Reply Br.)  The figures are those that Tridico initially reported in his cost ledger, and the Court finds that those costs are reasonable.  As a result, the Court will not make any reductions to the costs for court reporters and depositions.

### 3. Parking Costs

Finally, the District objects to various costs related to parking.  First, the District objects to the fact that Mr. Vinnick sought $37.00 for two parking fees for a single day on December 22, 2015.  (Def.'s Opp'n Br. at 14).  Second, the District objects to parking expenses for Ms. Cherry on January 8, 2015, and January 16, 2015, arguing there is no evidence that Ms. Cherry actually traveled to court those days.  (*Id.*)

As to the District's first objection, Tridico concedes a reduction of $18.50 for the potentially erroneous double charge for Mr. Vinnick's parking.  (Pl.'s Reply Br. at 21.)  As to the second objection, Tridico offers no response.  (*See id.*)  The Court will eliminate the cost of the duplicative parking fee for Mr. Vinnick and the parking fee for the two days Ms. Cherry's presence in court is not accounted for, for a total reduction of $72.00.

### CONCLUSION

Accordingly, Tridico's motion for attorney's fees is **GRANTED IN PART** and **DENIED IN PART**.  A separate Order accompanies this Memorandum Opinion.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:  January 30, 2017